06-4440-ag
Unite Here v. NLRB

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2007

(Argued: April 7, 2008          Decided: October 14, 2008)

Docket No. 06-4440-ag

--------------------------------------------------------x

UNITE HERE,

            Petitioner,

                    -- v. --

NATIONAL LABOR RELATIONS BOARD,


            Respondent.

--------------------------------------------------------x

B e f o r e :  WALKER, CABRANES, and RAGGI, Circuit Judges.


    Petitioner Union appeals from a decision of the National Labor Relations Board that found that a one-time stock award given in an equal amount to all employees of a company after an initial public stock offering was a gift and therefore not subject to mandatory bargaining.  The petition for review is denied.

IRA JAY KATZ, Associate General Counsel (David M. Prouty, General Counsel, on the brief), UNITE HERE, New York, NY, for Petitioner.

RICHARD A. COHEN, Senior Attorney (Ronald Meisburg, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Robert J. Englehart, Supervisory Attorney, on the brief) National Labor Relations Board, Washington, DC, for Respondent.

JOHN M. WALKER, JR., Circuit Judge:

Petitioner, Unite Here ("the Union"), seeks review of a National Labor Relations Board ("NLRB" or "Board") order dismissing a portion of the Union's complaint alleging unfair labor practices against employer North American Pipe Corporation ("NAP"). The Union claimed that NAP was required to bargain over a one-time stock award before distributing it to NAP's employees pursuant to Sections 8(a)(1) and (5) of the National Labor Relations Act ("NLRA"). Section 8(a)(1) of the NLRA makes it unlawful for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed [under the NLRA]," and Section 8(a)(5) makes it unlawful for an employer "to

2

refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(1), (5).

On appeal, the Union argues that the NLRB erred by applying an incorrect legal standard when it determined that the stock award qualified as a non-bargainable gift. The Union also contends that the NLRB's ultimate factual determination was erroneous.

**BACKGROUND**

Westlake Chemical Corporation ("Westlake"), of which NAP is a subsidiary, operates thirteen manufacturing facilities in the United States, with approximately 1500 employees. The Union represents fifty-six NAP employees at one of Westlake's manufacturing facilities.

Westlake was privately owned until August 11, 2004, when Westlake conducted an initial public offering ("IPO") of stock. The IPO was successful, and, a few days after the IPO, Westlake decided to make a one-time transfer of 100 shares of its stock to every Westlake employee. In a memorandum to all Westlake employees, Westlake announced:

> In recognition of this important historic company event and the significant contribution made by each of you toward the growth and success of the company, the Board of Directors

3

has authorized an award of <u>100 shares</u> of common stock to each full-time, regular employee with at least six months of service as of today.  These shares will be awarded to you initially in the form of stock units, and shares will be distributed to you at the conclusion of six months, provided you remained a regular, full-time employee during that period.

Please accept our appreciation for your efforts.  We are confident that as we work together we can continue to build a strong and successful Westlake Chemical Corporation for all of our shareholders, including each of you.

Westlake followed this announcement with a letter to each employee explaining that Westlake had taken steps to account for the tax obligations applicable to the award of stock and that each employee could elect to have the requisite tax paid either by withholding shares of common stock or by withholding cash from the employee's base pay.  Westlake awarded the same number of shares to all eligible hourly, supervisory, and management employees at all of its facilities.  The value of the 100 shares was approximately $1450 at the time of their issuance.

Westlake never sought to bargain with the Union over the stock award.  After learning of the stock award, the Union filed an unfair labor practice complaint alleging among other things that NAP, through whom Westlake had distributed the shares, had violated Sections 8(a)(1) and (5) of the NLRA, 29 U.S.C. § 158(a)(1),(5), by awarding shares of stock to the employees it

4

represented without affording the Union prior notice and an opportunity to bargain. The Board, with one member dissenting, found that no violation had occurred because the stock award was a one-time-only gift tied to the success of the IPO and that the award bore an insufficient connection to wages to bring it within the scope of the NLRA under the doctrine of <u>Benchmark Indus.</u>, 270 N.L.R.B. 22 (1984), <u>aff'd</u>, <u>Amalgamated Clothing v. NLRB</u>, 760 F.2d 267 (5th Cir. 1985) (unpublished table decision).

The Union now appeals from the NLRB's decision.

**DISCUSSION**

Congress has delegated authority to the National Labor Relations Board to decide whether a specific grievance is subject to mandatory bargaining. <u>Olivetti Office U.S.A., Inc. v. NLRB</u>, 926 F.2d 181, 185 (2d Cir. 1991). "[M]indful that decisions based upon the Board's expertise should receive, pursuant to longstanding Supreme Court precedent, 'considerable deference,'" <u>Ewing v. NLRB</u>, 861 F.2d 353, 357 (2d Cir. 1988) (citations omitted), "we afford the Board 'a degree of legal leeway,'" <u>NLRB v. Caval Tool Div.</u>, 262 F.3d 184, 188 (2d Cir. 2001) (citation omitted). "This court [therefore] reviews the Board's legal conclusions to ensure that they have a reasonable basis in law."

5

_Caval Tool Div._, 262 F.3d at 188. Its legal conclusions will be disturbed only if found to be "arbitrary or capricious." _Laborers' Int'l Union of N. Am. v. NLRB_, 945 F.2d 55, 58 (2d Cir. 1991).

"Factual findings of the Board will not be disturbed if they are supported by substantial evidence in light of the record as a whole." _Caval Tool Div._, 262 F.3d at 188. When reviewing for substantial evidence, our inquiry is limited to "determin[ing] whether the supporting evidence, even if not preponderating in this court's view, nevertheless provides a sufficient basis for the Board's decision." _NLRB v. Interboro Contractors, Inc._, 388 F.2d 495, 499 (2d Cir. 1967).

The issue before us is whether Westlake's award of its shares amounted to a unilateral increase in wages or an alteration of the terms and conditions of employment such that, in the absence of bargaining, it violated NLRA §§ 8(a)(1) and (5), 29 U.S.C. § 158(a)(1), (5). _See_ _NLRB v. Katz_, 369 U.S. 736, 747 (1962) ("Unilateral action by an employer without prior discussion with the union does amount to a refusal to negotiate about the affected conditions of employment under negotiation, and must of necessity obstruct bargaining, contrary to the congressional policy.").

6

**I.    The Board's Legal Conclusions**

The Union contends that the Board applied an incorrect legal standard because "gift doctrine case[ ]law" requires that, to be non-bargainable, an award must be of token value or given on holidays such as Christmas.  This argument challenges the Board's legal determination, which we will not disturb unless it is arbitrary and capricious.  The Union's argument is without merit, and we perceive nothing erroneous, much less arbitrary and capricious, in the Board's rejection of it.

The question of whether an award constitutes wages and therefore is the subject of mandatory bargaining turns upon whether the award is "so tied to the remuneration which employees received for their work that [it was] in fact a part of it." NLRB v. Niles-Bement-Pond Co., 199 F.2d 713, 714 (2d Cir. 1952). In ascertaining whether a stock award is so tied to remuneration that it must be the subject of bargaining, the Board looks to the relationship of the award to other employment-related factors, including work performance, wages, hours worked, seniority, and production.  See Benchmark Indus., 270 N.L.R.B. at 22.  An award that is sufficiently tied to these work-related factors is considered part of the overall compensation that an employee receives and is therefore mandatorily bargainable.  For example,

7

a bonus has been considered "employment-related" when it was tied to the company's profits, Waxie Sanitary Supply, 337 N.L.R.B. 303, 304 (2001), or when it was paid based on supervisory recommendations and work performance, Radio Television Technical Sch., Inc. v. NLRB, 488 F.2d 457, 460 (3d Cir. 1973). An additional consideration in the analysis is the regularity with which similar awards or payments have been made in the past. Bonuses that are not tied to other employment-related factors have been found to be the subject of mandatory bargaining when they were "paid over a sufficient length of time to have become a reasonable expectation of the employees and, therefore, part of their anticipated remuneration." NLRB v. Electro Vector, Inc., 539 F.2d 35, 37 (9th Cir. 1976) (citation and internal quotation marks omitted); accord United Shoe Mach. Corp., 96 N.L.R.B. 1309, 1314-15 (1951).

Contrary to the Union's argument, the determination of whether an award or bonus is bargainable, does not depend on whether it is of "token value." Although the Board has demonstrated its reluctance to hold that awards of nominal value are subject to mandatory negotiation, see, e.g., Benchmark Indus., 270 N.L.R.B. at 22 (describing dissent's contention that a dinner and a five-pound ham constituted wages as "overly

8

legalistic"), it has found bonuses of significant value not to be the subject of mandatory bargaining where the bonus is insufficiently tied to employment-related factors and not "of such a fixed nature . . . to have become a reasonable expectation of the employees and, therefore, part of their anticipated remuneration," Phelps Dodge Mining Co. v. NLRB, 22 F.3d 1493, 1496 (10th Cir. 1994) (citation and internal quotation marks omitted) (holding that "appreciation" bonuses, one of which was given to all employees in an amount equal to eighty hours of work at each employee's standard pay rate, were not subject to mandatory bargaining); see also NLRB v. Wonder State Mfg. Co., 344 F.2d 210, 213 (8th Cir. 1965) (finding award of one week's pay to be a gift and not subject to mandatory bargaining).

Whether the award is given during the holiday season is similarly of little consequence. There is nothing in the Board's established test that limits the gift doctrine to holiday gifts. To be sure, many awards given during the holidays have been found to bear an insufficient relationship to employment-related factors to constitute part of the employee's wages, but we have found no case restricting the gift doctrine's applicability to a particular holiday or season. The Board acted reasonably in refusing to recognize such an arbitrary and unprincipled

9

requirement.

We thus find that the Board did not err, much less abuse its discretion in rejecting the Union's contention that the gift doctrine is limited to awards of token value or those given at Christmas time.

**II.  The Board's Factual Findings**

The Union challenges the Board's factual findings on the same grounds that were the bases for one Board member's dissent. The dissent believed that the stock award was sufficiently tied to compensation that it should have been mandatorily bargainable. The ultimate question of whether the stock award is so tied to remuneration that it is in fact a part of it is "a question of fact [and if] the Board's finding to that effect [is] supported by substantial evidence it ends the matter." Niles-Bemont-Pond Co., 199 F.2d at 714.

First, the dissent noted that Westlake made preparations to withhold taxes from the stock award, which is consistent with a view that the stock award constituted wages.  The majority acknowledged that this factor might cut against treatment of the stock award as non-bargainable, but concluded that this factor was outweighed by other considerations.

10

Second, the dissent also argued that the stock award was tied to the number of hours worked, in that only full-time employees were eligible for the award. The majority pointed out, however, that the respondent never made this argument before the Board, and it noted both that the record was barren as to how Westlake determined full-time employment and that the Union proffered no evidence that any Union member was excluded because of this condition.

Last, the dissent argued that the award was tied to seniority because only employees who had worked for Westlake for six months were eligible and that the award was a condition of employment because it did not vest until the employee remained in full-time employment for six additional months. The majority found the link between the prescribed time periods set forth in the award announcement and the stock award to be "far too tenuous to support a conclusion that employees were receiving the stock because of their performance." N. Am. Pipe Corp., 347 N.L.R.B. No. 78, 2006-2007 NLRB Dec. ¶ 17174, at 4 (July 31, 2006). The majority concluded that the employees received the stock award because the successful IPO permitted it and not as a reward for working at NAP for six months prior to and six months after the stock award.

11

There is no basis to disturb the majority's factual conclusions. The stock award here was a one-time event, given to each employee, regardless of rank, in an equal amount. The record fully supports the majority's finding that the stock was issued to mark the success of the IPO and not because NAP sought to compensate those employees who had been at Westlake for six months and to entice those employees to stay for at least six more. Though the dissent made colorable arguments as to why the Board could have concluded that some of the employment-related factors supported a finding that the stock award should be treated as wages, the majority's conclusion is supported by substantial evidence.

In sum, we find that the Board's legal determinations were not arbitrary and capricious and that the Board's ultimate determination is supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, the petition is DENIED.